# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWARD PORT, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CAPITAL ONE, N.A, a Delaware limited liability company, | |
| Defendant. | |

Plaintiff Howard Port ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to him and on information and belief as to all other matters, by and through undersigned counsel, hereby brings this Class Action Complaint against Defendant Capital One, N.A. (collectively, "Defendant" or "Capital One").

## NATURE OF THE CASE

1.  In 2012, Capital One began offering customers a high-yield savings account it marketed as its "360 Savings" account. Capital One promised an interest rate for the 360 Savings account many times the rate offered by conventional savings accounts. Many customers, attracted by the rate, opened a 360 Savings account.

2.   In September 2019, Capital One began offering a "360 **Performance** Savings" account with identical material terms to its "360 Savings" account save for the interest rate. Without warning the customers with existing 360 Savings accounts, Capital One dropped the 360 Savings account interest rate to 1% and raised the 360 Performance Savings account interest rate to 1.9%. Further, Capital One ceased offering new customers the option to open a 360 Savings account and publishing the current interest rate on the Capital One website. Consequently, if a Capital One customer looked on Capital One's website for its published savings account interest rate, they would see only the 360 Performance Savings account. If account holders did not notice the addition of the word "Performance" in the name or did not realize that it was a whole new type of account, they would never know that that their savings accounts had been relegated to a lower interest rate tier.

3.   After September 2019, the difference in interest rates Capital One paid to 360 Savings account holders continued to expand with, for instance, the July 2023 interest for the 360 Performance Savings account at 4.15% annual percentage yield ("APY") as compared to 0.30% APY for the 360 Savings account.

4.   Despite their identical material terms, Capital One did not convert the 360 Savings accounts into 360 Performance Savings accounts automatically. Worse yet, Capital One denied 360 Savings account holders any notice that they had to transfer

funds into a 360 Performance Savings account in order to continue benefitting from market-competitive high-yield savings account rates.

5.  Rather, Capital One admitted that its creation of the 360 Performance Savings account rendered the 360 Savings account obsolete only *after* customers contacted them to inquire about the discrepancy between the rate Capital One was advertising for its savings accounts and the rate their accounts were accruing.

6.  When confronted by 360 Savings account holders who were confused by the discrepancy, customer service representatives would explain that even though they had wildly different interest rates, Capitol One's "360 Savings" accounts and "360 Performance Savings" accounts were otherwise identical. Representatives would subsequently inform customers that they could open a new account and transfer the funds over to benefit from higher rates.

7.  This asymmetry of information is not an oversight: Capital One directly benefits from funds kept in a virtually defunct account by virtue of the lower rates it provides at the expense of unsuspecting customers.

8.  In short, rather than explain to customers who had opened a savings account prior to September 2019 that their accounts had been relegated to a lower interest rate tier and outline how to fix the issue, Capital One chose to disguise this fact by using a nearly identical name for the new account and only disclosing the scheme when confronted by customers.

9. Capital One's motivation for this conduct is obvious. Capital One would continue to have access to deposits while paying a reduced interest rate to savings account holders who did not realize the role "Performance" played in distinguishing the accounts. For the few customers who noticed the underperformance of their investments, Capital One would offer to move their funds into a new account with the higher interest rate. And, of course, Capital One could attract new customers (and their deposits) with the higher interest rate offered by the 360 Performance Savings accounts.

10. Under the terms and conditions of the Capital One 360 Savings accounts, Capital One can change the interest rate at its discretion. Exercising this discretion to relegate all accounts opened before September 2019 to a lower tier interest rate status while disguising this fact from account holders is clearly an abuse of this discretion. Plaintiff Port is one such account holder and brings this action for breach of the clause of good faith and fair dealing imputed into every contract, unjust enrichment, and violations of state consumer protection law.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this matter is brought as a class action pursuant to Fed. R. Civ. P. 23, the proposed Class includes thousands of members, the Class contains at least one member of diverse citizenship from Defendant, and the aggregate amount

in controversy exceeds five million dollars ($5,000,000) excluding interest and costs.

12. Personal jurisdiction and venue are proper in New Jersey and within this District because Plaintiff is a resident and citizen of New Jersey; Plaintiff's Capital One savings account was opened at Capital One financial centers located in New Jersey and within this District; Plaintiff's claims alleged herein arose in substantial part in New Jersey and within this District; and Capital One does substantial business in New Jersey and throughout this District.

## **PARTIES**

### *Plaintiff Howard Port*

13. Plaintiff Howard Port is a citizen of New Jersey, residing at all relevant times in Branchburg, New Jersey. Plaintiff Port first acquired his savings account at Capital One when Capital One purchased ING in 2012 and converted his ING savings account to a Capital One 360 Savings account. Mr. Port held this Capital One 360 Savings account continuously through February 2023.

14. In the fall of 2022, Plaintiff Port noticed a market-wide increase in interest rates and decided to take a closer look at the interest rate on his savings account. Plaintiff Port could only see the Capital One 360 Savings Performance account on www.capitalone.com, which had a listed rate that was competitive with the market but appeared to be much higher than the rate he was receiving on his savings account.

- 5 -

15. In or around November or December of 2022, Plaintiff Port called Capital One's customer service line and spoke with a representative. He inquired about the discrepancy between the interest rate represented on the website and the interest rate on his account. The representative informed Plaintiff Port that Capital One had instituted a new high-yield savings account—i.e., 360 Savings Performance—to provide market-competitive rates. This phone call marked the first time Plaintiff Port became aware of the 360 Performance Savings account and that the 360 Savings account, the account type where he kept his funds, no longer offered competitive rates.

16. Plaintiff Port quickly began transferring funds away from his 360 Savings account to another bank. All of his funds were removed from Capital One by the end of February 2023.

17. Plaintiff Port maintained an account at Capital One for approximately 11 years because 360 Savings was represented as a market-competitive high-yield savings account.

18. Plaintiff Port had no reason to suspect that Capital One unilaterally created a new high-yield savings account without any notice or warning to 360 Savings account holders that the introduction of the 360 Performance Savings account would mean a silent phasing out of their accounts.

*Defendant Capital One*

19. Defendant Capital One is a national bank with its headquarters and principal place of business located in McLean, Virginia. Among other things, Capital One is engaged in the business of providing retail banking services to consumers, including Mr. Port and members of the putative Classes. Capital One operates banking centers, and thus conducts business, throughout the State of New Jersey, including within this District.

## FACTUAL ALLEGATIONS

*High-Yield Savings Account*

20. A savings account is an interest-bearing deposit account held at a bank or other financial institution.[1] For customers, savings accounts provide a good option for depositing cash to earn a competitive interest rate while remaining accessible for short-term needs. For banks, savings accounts provide an important source of deposits.  Savings account holders deposit funds into a savings account and typically only check their account status occasionally because, as the name indicates, the funds are meant to be "saved" for a later day. This contrasts with checking accounts which customers typically monitor more frequently since these types of accounts provide a source for regular bill payments and cash withdrawals.

---

[1] https://www.investopedia.com/terms/s/savingsaccount.asp (last accessed February 21, 2024).

21. More recently, banks operating primarily on the internet sought these types of savings deposits. In order to compete with other brick-and-mortar banks whose physical branch locations offered customers additional conveniences, internet banks began savings accounts with above-market interest rates they dubbed "high-yield savings accounts." [2]  Customers who opened these accounts would forgo the convenience of a physical branch location in order to receive rates of interest well above those offered by brick-and-mortar banks.

22. Traditionally, people have held a savings account at the same brick-and-mortar bank as their checking account out of convenience, however, this practice changed with the advent of banks operating primarily on the internet. Internet banks drew savings deposits away from brick-and-mortar banks with the above-market interest rates offered by their high-yield savings accounts.

23. The interest rates on a high-yield savings account can be up to 12 times the national average of a standard savings account.[3] This difference in interest rates is significant. For instance, if a customer held $5,000 in a conventional savings account, and the national average rate is 0.39% APY, that customer would earn

---

[2] https://www.investopedia.com/articles/pf/09/high-yield-savings-account.asp (last accessed February 21, 2024).
[3] *Id.*

$19.50 over the course of a year.[4] If that customer instead put that same $5,000 in an account earning 4.5%, the customer would earn approximately $225 in interest.

24. High-yield online savings accounts have made cash an increasingly attractive investment option. They provide a relatively low risk option for investors looking for a place to park their money, especially in uncertain economic times. Inflation, stagflation, recessionary fears, and stock market volatility are among the economic indicators that have encouraged more and more investors to consider cash as a way to balance their portfolios.

25. Unlike traditional brick-and-mortar institutions that offer a one-stop shop for all banking needs, banks offering high-yield savings accounts typically limit their features or offer few or no other products. Many do not offer checking accounts and few provide ATM cards. Generally, withdrawals and deposits are made by electronic bank transfer or mobile check deposit.

### *Capital One's Fraud on Customers*

26. Capital One is one such bank, offering more limited services and locations than the large national banks like Bank of America and Citi Bank, and focusing their presence more on the internet.

---

[4] FDIC. "National Rates and Rate Caps."
https://www.fdic.gov/resources/bankers/national-rates/ (last accessed February 21, 2024).

27. Capital One first entered the market of high-yield savings accounts with its acquisition of ING Direct in 2012. Up to that point, Capital One had a modest portfolio of savings account deposits it had mostly acquired through acquisition of regional banks.[5]  The ING acquisition represented a major move into that area of retail banking. For some time, ING had been one of the leaders in online savings interest rates.[6] That, coupled with good customer service, had engendered a loyal base of customers who held savings deposits in ING's high-yield savings accounts.

28. After the acquisition, Capital One rebranded the ING high-yield savings accounts as the "360 Savings" account, but maintained it as a fee-free, no-minimum savings account offering an above-market interest rate.[7] Above-market interest rates were necessary to attract customers since Capital One, like ING, had a relatively limited physical footprint as compared to traditional brick-and-mortar banks. Capital One offered this same 360 Savings account for many years, maintaining an above-market interest rate common for a high-yield savings account, generating trust and stability.

---

[5] https://www.forbes.com/sites/moneybuilder/2012/11/13/ing-direct-becoming-capital-one-360 (last accessed February 21, 2024).
[6] https://www.biblemoneymatters.com/capital-one-360-savings-review/ (last accessed February 21, 2024).
[7] *Id.*

29. In or around September 2019, Capital One reduced the interest rate on its 360 Savings accounts to a paltry 1% rate, well below what would be considered competitive for a high-yield savings account.  Within the same month, Capital One began offering a "360 <u>Performance</u> Savings" account with identical material terms to its "360 Savings" account save for a market-competitive interest rate. This way, Capital One got to have its cake and eat it too.  It could relegate loyal customers and their cash to a bargain-basement rate while attracting new money with a higher rate. New customers, and very clever account holders who notice the single-word difference and move their funds to Capital One's new savings account, earn nearly double the rate (1.9%) from the newly created "360 Performance" Savings account.

30. In or around September 2019, Capital One launched a steady but significant reduction of the interest rate on their 360 Savings accounts. In November of 2019, for the first time in a few years, the rate on the 360 Savings account fell below 1% to 0.797%. In December of 2019, this rate dropped to 0.598. In March, September, and December of 2020, the rate on the account continued dropping lower (0.499%, 0.399%, and 0.3%, respectively), to rates significantly below what would be competitive for a high-yield savings account at the time. Since December 2020, the rate on the now-phased out 360 Savings account appears to be locked to a below-market rate of 0.3%.

31. Throughout all this time, 360 Savings account holders had no reason to suspect that Capital One would effectuate a switcheroo. Savings account holders deposit funds into a savings account and then typically only check their fund status occasionally because, as the name indicates, the funds are meant to be "saved" for a later day. This contrasts with checking account holders, who typically monitor their checking accounts more frequently since they provide a source for regular bill payments and cash withdrawals. 360 Savings account holders had no reason to suspect or notice Capital One Capital One's covert practices: except for the slight name change and the interest rate, the savings accounts were identical.

32. A casual viewer of the Capital One marketing campaign for the "new" 360 Performance Savings account would observe Capital One made little effort to distinguish between its old and new accounts. Font size, webpage layout, advertising message, etc., all remain the same.

33. Compare the Capital One savings account webpage available on July 1, 2019[8]:

[8] https://web.archive.org/web/20190701014941/https:/www.capitalone.com/bank/savings-accounts/online-savings-account/; *see* https://www.capitalone.com/bank/savings-accounts/online-savings-account/ (accessed February 21, 2024 via Wayback Machine).



34. To the Capital One savings account webpage available on July 1, 2020[9]:



35. The interest rate difference between the 360 Savings account and the 360 Performance Savings account is significant for consumers who want to keep their money in insured savings accounts rather than risk it in other investments, a

---

[9] https://web.archive.org/web/20200701055855/https://www.capitalone.com/bank/savings-accounts/online-performance-savings-account/; *see* https://www.capitalone.com/bank/savings-accounts/online-performance-savings-account/ (accessed February 21, 2024 via Wayback Machine).

reasonable strategy during turbulent times. Keeping customers in the old, low-rate account saves Capital One about $200 for every $20,000 in deposits—and costs unsuspecting consumers that amount.

## CLASS ACTION ALLEGATIONS

36.    Plaintiff seeks relief in his individual capacity and seeks to represent a class consisting of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of the following class:

### Nationwide Class

All persons or entities in the United States and its territories who held a Capital One 360 Savings account prior to September 2019 and maintained funds on the account after September 2019.

37.    Plaintiff also seeks to certify the following state class:

### New Jersey Class

All persons or entities in the state of New Jersey who held a Capital One 360 Savings account prior to September 2019 and maintained funds on the account after September 2019.

38.    The Nationwide Class and the New Jersey Class above are collectively referred to herein as the "Class," and their members as "Class Members."

39.    Plaintiff reserves the right to amend or modify these Class definitions after having an opportunity to conduct discovery.

40.    <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The Class is so numerous that joinder of all members is unfeasible and impracticable. While the precise number of

Class Members has not been determined at this time, Plaintiff is informed and believes that thousands of consumers maintained a Capital One 360 Savings account before and after September of 2019.

41.    <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include for the Class, without limitation:

a.    Whether Defendant should have disclosed the difference between the interest rate of the 360 Savings account and the 360 Performance Savings account;

b.    Whether Defendant failed to disclose the interest rate difference between savings accounts;

c.    Whether the facts not disclosed by Defendant regarding the 360 Savings account were material;

d.    Whether Defendant violated state consumer protection statutes by its conduct; and

e.    Whether Defendant should be required to reimburse Plaintiff and Class Members for the interest they would have earned had they deposited funds in a 360 Performance Savings account at the time of its creation.

42.     <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of Class Members. Plaintiff and all Class Members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

43.     <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel are competent and experienced in litigating class actions.

44.     <u>Superiority of Class Action</u>. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There are no anticipated difficulties in the management of this action as a class action.

## COUNT I
**Breach of Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Nationwide Class)**

45.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

46.     Plaintiff and Capital One contracted for account deposits, as embodied in Capital One's account agreement and relevant documentation.

47.     Under the laws of the states where Capital One does business, good faith is an element of every contract pertaining to Capital One's high-yield savings accounts. Whether by common law or statute, all such contracts imposed and continue to impose upon each party a duty of good faith and fair dealing.

48.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

49.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain; willful rendering of imperfect performance; hiding, concealing, or disclosing in an inaccessible manner purportedly contractual terms; abuse of a power to specify terms; and interference with or failure to cooperate in the other party's performance.

50.     Between 2012 and the present, Capital One breached the covenant of good faith and fair dealing in the version of the Account Agreement to which the Plaintiff and the Class Members assented through its change-your-account practices. Capital

One intentionally interfered with the Plaintiff's and Class Members' right to receive the benefits of their investment to a high-yield savings account Capital One touted as offering above-market rates. Capital One's change-your-account practices were in bad faith and for the purpose of withholding the very consideration that attracted customers to maintain savings account in the first place.

51.     Capital One benefited from its change-your-account practices by depriving unsuspecting account holders of the spirit of their contracts with Capital One at the account holders' expense.

52.     Plaintiff and the Class Members have performed all, or substantially all, of the obligations imposed on them under the version of the account agreement to which they assented.

53.     Plaintiff and Class Members have sustained damages as a result of Capital One's breach of the covenant of good faith and fair dealing.

## COUNT II
### Violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.* ("NJCFA") (On Behalf of Plaintiff and the New Jersey Class)

54.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

55.     The New Jersey Consumer Fraud Act ("NJCFA") protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or

omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

56.    "The term 'merchandise' shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. § 56:8-1.

57.    Plaintiff Port and the New Jersey Class Members are consumers who contracted with Defendant to hold funds in an interest-bearing savings account for personal, family, or household use.

58.    At all relevant times, Defendant conducted trade and commerce in New Jersey within the meaning of the NJCFA.

59.    Defendant violated the NJCFA by engaging in the following deceptive trade practices:

    a)    affirmatively representing that Defendant would offer a competitive interest rate on the 360 Savings account when the truly competitive interest rate was offered on the 360 Performance Savings account; and

    b)    omitting and concealing the difference in interest rates between the 360 Savings account and the 360 Performance Savings account.

60.    Plaintiff Port and the New Jersey Class Members reasonably expected that the 360 Savings account would provide a reasonable rate of interest.

61.     Defendant knew, or, in the exercise of diligence, should have known, that the interest rate offered by the 360 Savings account was not a reasonably competitive rate for that type of savings account.

62.     In failing to disclose its change-your-account practices, the phasing out of the 360 Savings account and its dropping rates, and the availability of a different high-yield savings account, with better rates, that customers could transfer their funds to, Defendant omitted material facts it was under a duty to disclose to Plaintiff Port and the New Jersey Class Members.

63.     The injury to consumers by this conduct greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances.

64.     Had Plaintiff Port and the New Jersey Class Members known about Capital One's change-your-account practices at the time of account creation, they would not have invested with Capital One.

65.     Had Plaintiff Port and the New Jersey Class Members been adequately notified by Defendant about its change-your-account practices, they would not have invested with Capital One.

66.     As a direct and proximate result of Defendant's actions, Plaintiff Port and the New Jersey Class Members have suffered economic damages including, but not limited to, substantial losses in value of their investments, and other damages.

67.     Pursuant to N.J. Stat. Ann. § 56:8-20, Plaintiff will serve the New Jersey

Attorney General with a copy of this Complaint within 24 hours of filing.

## COUNT III
### Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class or,
### in the Alternative, on Behalf of the New Jersey Class)

68.     Plaintiff realleges and incorporates by reference the preceding

paragraphs as if fully set forth herein.

69.     Plaintiff brings this cause of action individually and on behalf of the

Class.

70.     Capital One incentivized customers to open a Capital One 360 Savings

account with representations that it would offer them an above-market interest rate

appropriate for a high-yield savings account. Unbeknownst to customers, Capital

One created a virtually identical savings account it named the "360 Performance

Savings" account. At the same time Capital One introduced this high-yield savings

account, it ceased marketing and offering  the prior 360 Savings account and reduced

the interest rate on that account to well below what would be competitive in the

market. Unsuspecting customers looking online at the current savings account

interest rate would see the prevailing interest rate for the 360 Performance Savings

account and naturally assume the rate posted on Capital One's website was

representative of the rate offered by such customers' savings accounts. Capital One

accordingly retained access to the customer funds in the 360 Savings account while

leading customers to believe that they were receiving the interest rate which was, in effect, only reserved for the holders of the 360 Performance Savings accounts.

71.     As a result of its fraudulent acts and omissions related to the 360 Savings account, Capital One withheld interest rate monies which rightfully belonged to Plaintiff and the Class Members, to the detriment of Plaintiff and the Class Members.

72.     Capital One appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the proposed Class Members who, without knowledge of the lower interest rate, received significantly less for the privilege of holding customer funds in Capital One's savings account program.

73.     It would be inequitable and unjust for Capital One to retain these wrongfully obtained profits.

74.     Capital One's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

75.     Plaintiff and the Class Members are entitled to restitution of the profits unjustly obtained plus interest.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment in his favor and against Defendant, as follows:

A.     Declaring that this action is a proper class action, certifying the Classes

as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel;

B.     Ordering Defendant to pay compensatory, exemplary, and/or statutory damages to Plaintiff and Class Members in an amount to be proven at trial;

C.     Ordering Defendant to pay restitution to Plaintiff and Class Members;

D.     Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and Class Members;

E.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded, as allowed by law; and

F.     Ordering such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated:  February 21, 2024                 Respectfully submitted,

*/s/ Bradley K. King*
Bradley K. King (NJ Bar No. 081472013)
*bking@ahdootwolfson.com*
Robert R. Ahdoot (*pro hac vice* to be filed)
*rahdoot@ahdootwolfson.com*
Christopher E. Stiner (*pro hac vice* to be filed)
*cstiner@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

*Counsel for Plaintiff and the Putative Classes*

- 24 -